ALGER DeCARE v AMERICAN FIDELITY FIRE INSURANCE
COMPANY

AMERICAN FIDELITY FIRE INSURANCE COMPANY v LONNIE
DeCARE

Docket Nos. 72436, 72437. Submitted May 3, 1984, at Lansing.—
Decided September 11, 1984. Leave to appeal applied for.

In 1979, Lonnie DeCare told his insurance agent, Alpine-North
Insurance Company (Alpine), to add a 1972 Chevrolet pickup
truck to his automobile insurance policy. Alpine notified Ameri-
can Fidelity Fire Insurance Company (AFF) through Hallmark
Underwriters (Hallmark), AFF's agent. On February 20, 1980,
Lonnie allegedly instructed Alpine by telephone to delete the
Chevy pickup from the policy and substitute a 1972 Dodge
Dart. The truck, however, continued to be listed in the policy,
allegedly through the negligence of Alpine or Hallmark. On
May 3, 1980, Lonnie was traveling in the truck with his two
brothers, Alger and Ernest DeCare. Lonnie ran a stop sign and
the truck collided with another automobile. All three DeCare
brothers were injured. Ernest received the most serious inju-
ries, is presently a quadriplegic, and will require treatment for
the rest of his life. Shortly after the accident Ernest applied for
Medicaid assistance. Pursuant to this application the state paid
$55,455.81 for Ernest's medical care. Lonnie applied for no-fault
benefits with Michigan Claims Services, Inc, a company which
serviced AFF claims. On October 16, 1980, Lonnie gave a
statement to a claims adjuster, representing that neither he
nor his wife had ever requested that the 1972 pickup truck be
deleted from the policy. On December 12, 1980, Alger DeCare
(individually and as conservator of Ernest's estate) sued AFF in
the Alpena Circuit Court for no-fault benefits (DeCare #1).
AFF settled the suit after it agreed to pay Lonnie's policy
limits of $20,000 to both Alger and Ernest. The agreement also
provided that AFF would continue to pay all statutorily man-
dated personal protection (PIP) benefits. AFF claimed that it

REFERENCES FOR POINTS IN HEADNOTES
[1] 46 Am Jur 2d, Judgments §§ 406, 407, 477.
[2] 46 Am Jur 2d, Judgments § 477 et seq.
  61A Am Jur 2d, Pleading § 312.

voluntarily agreed to settle this case based on the statements made by Lonnie to the claims adjuster on October 16, 1980. On February 23, 1981, the Attorney General, on behalf of the Department of Social Services (DSS), a subrogee of Ernest, sued AFF in the Ingham Circuit Court for reimbursement of various medical bills paid by Medicare for the DeCare brothers' treatment (DSS case). AFF's answer admitted that it insured the pickup truck at the time of the accident, an admission AFF now claims it was fraudulently induced to make based on Lonnie's misrepresentation to the claims adjuster. In 1981 AFF sued Hallmark and Alpine in the Oakland Circuit Court for their alleged negligence in failing to delete the truck from Lonnie's policy (Hallmark suit). On November 13, 1981, AFF deposed Lonnie pursuant to this suit. In this deposition Lonnie testified that he indeed had, on or about February 20, 1980, requested of Alpine that the 1972 Chevy pickup be deleted from his policy. As a result of this deposition testimony, AFF filed suit against Lonnie and Elaine DeCare in the Alpena Circuit Court on December 20, 1981 (the AFF reformation suit). AFF sought to reform the DeCare's insurance policy to accurately reflect the instructions and intent of Lonnie DeCare to delete the pickup from the policy. In March of 1982, AFF instructed the Michigan Claims Service to stop paying PIP benefits to Ernest. On May 10, 1982, Alger DeCare filed a second suit (DeCare #2) on behalf of Ernest in the Alpena Circuit Court to force AFF to resume paying PIP benefits. This suit was based on the settlement in the DeCare #1 suit. On May 11, 1982, AFF made a motion in the DSS case to amend its answer to reflect its contention that the pickup was not insured at the time of the accident. On July 13, 1982, State Farm Mutual Automobile Insurance Company (State Farm) was joined in the DSS suit. DSS alleged that, if AFF was held not liable, State Farm would be liable pursuant to the assigned claims plan. State Farm brought a motion to dismiss itself from the DSS suit. DSS brought a motion for summary judgment claiming that AFF had already admitted liability. On January 26, 1983, Ingham County Circuit Court Judge James T. Kallman denied AFF's motion to amend its answer, stating: "That the Court will not allow amendment of Defendant American Fidelity's pleadings at this time to deny liability since, pursuant to GCR 118 such a ruling would not result in justice and because American Fidelity is estopped from denying coverage based upon the excessive length of time which has passed since this suit was commenced." The same order also granted State Farm's motion to be dismissed from the case. In a subsequent opinion and order, Judge Kallman granted DSS's motion for

summary judgment, and ordered AFF to pay PIP benefits in the amount of $70,646.24, plus interest and attorney fees. AFF's delayed application for leave to appeal that order was denied by the Court of Appeals. Meanwhile, in the DeCare #2 suit, State Farm brought a motion for summary judgment after being added as a party defendant. State Farm also sought to be reimbursed by AFF for first-party benefits paid to Ernest. Ernest also brought a motion for summary judgment against AFF, claiming that it was estopped from denying liability. In the AFF reformation suit, Lonnie and Elaine DeCare brought a motion for summary judgment based on estoppel and waiver, and Judge Joseph P. Swallow consolidated the DeCare #2 suit and the AFF reformation action on his own motion. On May 27, 1983, Judge Swallow granted Lonnie's motion for accelerated judgment, barred AFF's reformation claim based on res judicata, and ordered AFF to pay to Ernest's estate PIP benefits currently due and those accruing pending the outcome on appeal. He also ordered AFF to reimburse State Farm for PIP benefits paid by State Farm to Ernest's estate. AFF appealed in both actions and the appeals were consolidated by the Court of Appeals. *Held:*

The doctrine of res judicata provides that, where two parties have fully litigated a particular claim and a final judgment has resulted, that claim may not be relitigated by the losing party. There are three prerequisites for a prior judgment to constitute a bar in a subsequent action under res judicata: (1) the former action must have been decided on the merits; (2) the same matter contested in the second action must have been decided in the first action; and (3) the two actions must be between the same parties or their privies. A denial of a motion to amend pleadings on the basis of the futility of the amendment is a determination that the proposed claims are substantively without merit, that is, frivolous or legally without merit, and such a determination is entitled to res judicata impact. Judge Kallman's denial of AFF's motion to amend and his grant of summary judgment in the DSS suit were properly given res judicata impact.

Affirmed.

SHEPHERD, J., concurred, noting that AFF may still pursue its theory of the case in the Hallmark suit.

1. ACTIONS — DEFENSES — RES JUDICATA.

The doctrine of res judicata provides that, where two parties have fully litigated a particular claim and a final judgment has resulted, that claim may not be relitigated by the losing party; there are three prerequisites for a prior judgment to constitute

a bar in a subsequent action under res judicata: (1) the former action must have been decided on the merits; (2) the same matter contested in the second action must have been decided in the first action; and (3) the two actions must be between the same parties or their privies.

2. ACTIONS — DEFENSES — RES JUDICATA — AMENDMENT OF PLEADINGS — DENIAL OF MOTION TO AMEND PLEADINGS.
   A denial of a motion to amend pleadings on the basis of the futility of the amendment is a determination that the proposed claims are substantively without merit, and such a determination is entitled to res judicata impact.

*Lowell Blumberg, Attorney at Law, P.C.* (by *Lowell Blumberg*), for plaintiff.

*Hayim I. Gross, Stephen Dean, Esq.,* and *Irving R. Blum, Esq.,* for American Fidelity Fire Insurance Company.

*Bensinger & Combs, P.C.* (by *Michael D. Combs*), for State Farm Mutual Automobile Insurance Company.

Before: SHEPHERD, P.J., and CYNAR and S. D. BORMAN,* JJ.

PER CURIAM. American Fidelity Fire Insurance Company (AFF) appeals as of right from the opinion and orders of the trial court which granted accelerated and summary judgments in two cases which the court consolidated on its own motion. These appeals concern various insurance suits arising from an accident injuring Lonnie DeCare (Lonnie) and his two brothers, Alger and Ernest. In Docket No. 72436, AFF appeals from the trial court's order requiring it to continue to pay personal injury protection (PIP) benefits to Ernest DeCare. In Docket No. 72347, AFF appeals from an order dismissing its complaint to reform the

_____
* Circuit judge, sitting on the Court of Appeals by assignment.

insurance policy between it and Lonnie. This Court consolidated these appeals on its own motion.

In 1979 Lonnie told his insurance agent, Alpine-North Insurance Company (Alpine), to add a 1972 Chevrolet pickup truck to his automobile insurance policy. Alpine notified AFF through Hallmark Underwriter (Hallmark), AFF's agent. On February 20, 1980, Lonnie allegedly instructed Alpine by telephone to delete the Chevy pickup from the policy and substitute a 1972 Dodge Dart. The truck, however, continued to be listed in the policy, allegedly through the negligence of Alpine or Hallmark.

On May 3, 1980, Lonnie was traveling in the truck with his two brothers. Lonnie ran a stop sign and the truck collided with another automobile. All three DeCare brothers were injured. Ernest received the most serious injuries, is presently a quadriplegic, and will require treatment for the rest of his life. Shortly after the accident Ernest applied for Medicaid assistance, MCL 400.105 *et seq.;* MSA 16.490(15) *et seq.;* pursuant to this application the state paid $55,455.81 for Ernest's medical care.

Lonnie applied for no-fault benefits with Michigan Claims Services, Inc., a company which serviced AFF claims. On October 16, 1980, Lonnie gave a statement to a claims adjuster, representing that neither he nor his wife had ever requested that the 1972 pickup truck be deleted from the policy. There followed a series of lawsuits, which are summarized below.[1]

---

[1] To aid the reader in sorting out the various suits involved, a capsulized version of them follows:

1. DeCare #1. *Alger DeCare, Conservator of the Estate of Ernest DeCare, L.I.P., & Alger DeCare, individually v AFF & Lonnie DeCare & Elaine DeCare,* filed in December of 1980. Plaintiff sought no-fault

On December 12, 1980, Alger DeCare (individually and on behalf of Ernest's estate) sued AFF in Alpena County for no-fault benefits (DeCare #1). AFF settled the suit after it agreed to pay Lonnie's policy limits of $20,000 to both Alger and Ernest. The agreement also provided that AFF would continue to pay all statutorily mandated PIP benefits. AFF claimed that it voluntarily agreed to settle this case based on the statements made by Lonnie to the claims adjuster on October 16, 1980.

On February 23, 1981, the Attorney General, on behalf of the Michigan Department of Social Services (DSS), a subrogee of Ernest, sued AFF in Ingham County for reimbursement of various medical bills paid by Medicare for the DeCare brothers' treatment (the DSS case). AFF's answer admitted that it insured the pickup truck at the time of the accident, an admission AFF now claims it was fraudulently induced to make based on Lonnie's misrepresentation to the claims adjuster.

In 1981 AFF sued Hallmark and Alpine in Oakland County for their alleged negligence in failing to delete the truck from Lonnie's policy

insurance benefits. AFF settled and paid the policy limits of $20,000 to both Alger and Ernest.

2. DSS suit. *Michigan Dep't of Social Services, subrogee of Ernest DeCare v AFF,* filed in February of 1981 in Ingham County. DSS sought reimbursement for medical bills paid by Medicaid for the DeCares' treatment. Summary judgment by Judge Kallman on behalf of DSS.

3. Hallmark suit. *AFF v Hallmark Underwriters & Alpine-North Ins Agency,* filed in March of 1981 in Oakland County. AFF sued for negligence in failing to delete the truck from the policy. Current status unknown.

4. AFF reformation suit. *AFF v Lonnie DeCare & Elaine DeCare,* filed in December of 1981 in Alpena County. AFF sought to reform the insurance contract to reflect Lonnie's "true intent". Summary judgment granted by Judge Swallow for the defendants.

5. DeCare #2. *Alger DeCare, Conservator of the Estate of Ernest DeCare, L.I.P. v AFF,* filed in May of 1982 in Alpena County. Plaintiff sued after AFF and the Michigan Claims Services discontinued benefits. Summary judgment by Judge Swallow on behalf of the plaintiff.

(the Hallmark suit). On November 13, 1981, AFF deposed Lonnie pursuant to this suit. In this deposition Lonnie told AFF's attorney that he indeed had, on or about February 20, 1980, requested of Alpine that the 1972 Chevy pickup be deleted from his policy.

As a result of this deposition testimony, AFF filed suit against Lonnie and Elaine DeCare in Alpena County on December 20, 1981 (the AFF reformation suit). AFF sought to reform the De-Care's insurance policy "to accurately reflect the instructions and intent of Lonnie DeCare to delete the 1972 Chevrolet from the policy * * *". In March of 1982, AFF instructed the Michigan Claims Services to stop paying PIP benefits to Ernest.

On May 10, 1982, Alger DeCare filed a second suit (DeCare #2) on behalf of Ernest in Alpena County to force AFF to resume paying PIP benefits. This suit was based on the settlement in the DeCare #1 suit.

On May 11, 1982, AFF made a motion in the DSS case to amend its answer to reflect its contention that the pickup was not insured at the time of the accident. On July 13, 1982, appellee State Farm Mutual Automobile Insurance Company (State Farm) was joined in the DSS suit. DSS alleged that, if AFF was not liable, State Farm would be liable pursuant to the assigned claims plan authorized by MCL 500.3171 *et seq.;* MSA 24.13171 *et seq.* State Farm brought a motion to dismiss itself from the DSS suit. DSS brought a motion for summary judgment claiming that AFF had already admitted liability. On January 26, 1983, Ingham County Circuit Court Judge James T. Kallman denied AFF's motion to amend its answer, stating:

"That the Court will not allow amendment of Defendant American Fidelity's pleadings at this time to deny liability since, pursuant to GCR 118 such a ruling would not result in justice and because American Fidelity is estopped from denying coverage based upon the excessive length of time which has passed since this suit was commenced."

The same order also granted State Farm's motion to be dismissed from the case.

In a subsequent opinion and order dated February 3, 1983, Judge Kallman granted DSS's motion for summary judgment. AFF was ordered to pay PIP benefits in the amount of $70,646.24, plus interest and attorney fees. AFF's application for leave to appeal that order was denied by this Court.

Meanwhile, in the DeCare #2 suit, State Farm brought a motion for summary judgment after being added as a party defendant. State Farm also sought to be reimbursed by AFF for first-party benefits paid to Ernest in the amount of $23,178.78. Ernest also brought a motion for summary judgment against AFF, claiming that it was estopped from denying liability.

In AFF's reformation suit, Lonnie and Elaine DeCare brought a motion for summary judgment based on estoppel and waiver. On March 23, 1983, Judge Swallow consolidated the DeCare #2 suit and AFF's reformation action on his own motion.

On April 12, 1983, Judge Swallow heard all the motions for summary judgment, took the matter under advisement, and ordered all parties to submit supplemental briefs as to whether Judge Kallman's orders were res judicata and whether AFF was estopped to deny liability.

On May 27, 1983, Judge Swallow granted Lonnie's motion for accelerated judgment and barred

AFF's reformation claim based on res judicata. The court ordered AFF to pay to Ernest's estate PIP benefits currently due and those accruing pending the outcome of the appeal. He also ordered AFF to reimburse State Farm for PIP benefits paid by State Farm to Ernest's estate.

AFF contends that Judge Swallow erred in holding that the DSS suit was res judicata. In *Ward v DAIIE,* 115 Mich App 30, 37; 320 NW2d 280 (1982), this Court stated:

"The doctrine of res judicata provides that where two parties have fully litigated a particular claim and a final judgment has resulted, that claim may not be relitigated by either party. In *Tucker v Rohrback,* [13 Mich 73, 75 (1864)] the Supreme Court delineated three prerequisites for a prior judgment to constitute a bar in a subsequent action: (1) the former action must have been decided on the merits; (2) the same matter contested in the second action must have been decided in the first; and (3) the two actions must be between the same parties or privies." (Footnotes omitted.)

AFF argues that the "merits" of its claim, *i.e.,* the issues of reformation and mutual mistake, were never addressed in the former action (the DSS suit). AFF also contends that Judge Kallman's denial of its motion to amend indicates the merits were never reached. In *Martin v Michigan Consolidated Gas Co,* 114 Mich App 380, 383-384; 319 NW2d 352 (1982), the Court stated:

"In most instances, the denial of a motion to amend will not be a decision on the merits. For example, when amendment is denied because of undue delay, bad faith, dilatory motive or undue prejudice to the opposing party, *Ben P Fyke & Sons v Gunter Co,* 390 Mich 649, 656; 213 NW2d 134 (1973), the substance of the claims sought to be added will not likely have been considered. However, when, as in the present case, the denial is

made on the basis of the futility of the amendment, it is in effect a determination that the added claims are substantively without merit; that is, that the claims are frivolous or legally insufficient on their face. See 6 Wright & Miller, Federal Practice & Procedure, § 1487, pp 432-433. Such a determination is entitled to res judicata impact."

See also 46 Am Jur 2d, Judgments, § 478, pp 642-643.

In the case at bar, undue delay was but one basis for denial of AFF's motion. Judge Kallman's order also indicates that the amendment would be unjust under the circumstances. In effect, he ruled that the amendment would be "substantively without merit" based on the general rule which prevents changes in insurance contracts after accidents have occurred. See. *DAIIE v Ayvazian,* 62 Mich App 94, 100; 233 NW2d 200 (1975); *State Farm Mutual Automobile Ins Co v Kurylowicz,* 67 Mich App 568; 242 NW2d 530 (1976); *Frankenmuth Mutual Ins Co v Latham,* 103 Mich App 66, 68; 302 NW2d 329 (1981). Judge Kallman's remarks at the hearing on the motion for summary judgment make it clear that he was well aware of the factual basis behind AFF's motion to amend. Signficantly, Judge Kallman entertained the motion to amend along with State Farm's motion for summary judgment. The court was thus able to dispose of the merits at the same time it denied the motion to amend. Having first decided that the merits of AFF's claims were weak, the court indicated that amendment would serve no useful purpose. AFF's delayed application for leave to appeal was denied by this Court. Under these circumstances, we consider the lower court's disposition of AFF's claims an adjudication on the merits. See *Curry v Detroit,* 394 Mich 327, 332; 231 NW2d 57 (1975).

The second criterion enunciated in *Tucker, supra,* mandates that the same matter contested in the second action must have been decided in the first action. In the DSS action, Judge Kallman ruled: (1) AFF accepted liability when it admitted in its answer that it insured the pickup at the time of the accident; (2) Lonnie's coverage could not be terminated after the accident; (3) AFF was therefore required to reimburse DSS; and (4) AFF could not amend its answer because it would be an injustice to allow AFF to do so.

In AFF's reformation action, the contested issue was whether AFF should be allowed the opportunity to reform the insurance contract. Nevertheless, stripped of all superfluousness, the ultimate issue was really whether AFF would be able to avoid continuing liability. In the DeCare #2 suit, Ernest sued AFF based on its alleged instruction to Michigan Claims Services to stop making payments. Again, the real issue was AFF's continuing liability. Judge Swallow recognized the identical nature of the two suits and consolidated them on his own motion. He also correctly recognized that the issue of AFF's continuing liability had already been decided in the prior DSS action.

The third criterion from *Tucker* was also met. DSS was subrogated to the rights of Ernest in the first suit, and Ernest was a direct party in the second suit. Accordingly, DSS (or the Attorney General) in effect stood in Ernest's shoes for purposes of the first action. See 21 Michigan Law & Practice, Subrogation, § 1, p 173. In conclusion, the three criteria from *Tucker, supra,* were met, and Judge Swallow correctly gave res judicata effect to Judge Kallman's prior rulings in the DSS case.

AFF also maintains that Lonnie's alleged misrepresentation constitutes a fraud or change in circumstances sufficient to prevent application of

the res judicata doctrine. See *Cramer v Metropolitan Savings Ass'n,* 125 Mich App 664, 671-672; 337 NW2d 264 (1983); *Cloverlanes Bowl, Inc v Gordon,* 46 Mich App 518; 208 NW2d 598 (1973). In our case however, Judge Kallman was well aware of Lonnie's contradictory deposition testimony prior to denial of AFF's motion to amend. Thus the "changed circumstances" did not arise after the first judgment, nor was the "fraud" discovered only after that judgment, 46 Am Jur 2d, Judgments, § 473, pp 638-639.

Finally, AFF argues that Judge Kallman's ruling was limited in scope to accrued medical costs and may not bar adjudication as to continuing PIP benefits. We cannot give credence to this contention. In the DeCare #1 settlement, AFF agreed to pay continuing PIP benefits. The ensuing litigation involved not only those benefits due, but the continuing benefits as well.

We conclude that Judge Swallow correctly applied the principles of res judicata to the prior rulings of Judge Kallman.

Affirmed.

SHEPHERD, P.J., concurs. AFF is not without relief since it may still pursue its theory of the case in the Hallmark suit in Oakland County.